Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the deputy commissioner as follows:
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. Aetna Casualty Surety Company was the compensation carrier on the risk.
4. The date of alleged injury was 10 February 1992.
5. Plaintiff's average weekly wage was $484.80.
The parties also stipulated to 237 pages of medical records and a copy of plaintiff's employment records marked Plaintiff's Exhibit 1.
* * * * * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a 40-year-old college graduate who holds a Bachelor's Degree in Vocational/Industrial Education and a Master's Degree in Management. She served in the Army from 1977 to 1984 as a calibration and repair technician and Master Instructor of Electronics. When she moved to Greensboro in 1989 she taught Electronics at ECPI Computer Institute. She is well educated and very skilled. Her goal is to obtain her Ph.D. and thereafter teach and/or write.
2. Plaintiff has a long standing history of headaches and neck, shoulder and right arm pain dating back to 1977. While in the Army she received extensive treatment for these complaints, as well as complaints of low back pain and depression, and was restricted at times in her ability to engage in running and aerobics in the Army. Also noted in the Army records is a history of interpersonal problems and job dissatisfaction. Upon her discharge from the Army she indicated that she was going to apply for disability.
3. Plaintiff has known for years that she suffers from Klippel-Feil syndrome, which is a painful craniovertebral abnormality involving congenitally fused vertebra in the cervical spine.
4. In June 1990 plaintiff went to work for defendant-employer as a bench repair technician. Her duties included repairing converters and amplifier modules, completing paperwork, and interacting with vendors. It took approximately 20 to 30 minutes to repair one converter. It involved unscrewing 10 or more screws with a manual screwdriver, desoldering bad components, soldering four or five leads, replacing bad components, then screwing the circuit board and cover back on the module. The converters and modules themselves are very light weight.
5. Plaintiff had interpersonal problems with her co-workers at defendant-employer from the beginning of her employment. She had numerous loud verbal encounters with her fellow employees which were disruptive to the department. Plaintiff is histrionic, narcissistic, and has tendencies towards characterological problems involving impulsivity, poor frustration tolerance, over sensitivity, psychomotor acceleration, and expansive mood, such that she is likely to have confused thinking, unusual thought content, feelings that she is misunderstood, mistreated and persecuted, and an unrealistic self appraisal. She has been diagnosed with bipolar disorder and personality disorder with histrionic and narcissistic features unrelated to any alleged work injury.
6. On 22 May 1991 plaintiff presented to Dr. Mortenson, an orthopaedic surgeon, with complaints of neck and right shoulder, elbow and forearm pain dating back to an automobile accident in February. Dr. Mortenson diagnosed lateral epicondylitis of the right elbow and injected the elbow on first visit and again on 21 October 1991 and 12 February 1992.
7. At no time during 1991 did plaintiff report to her supervisor that she was having right elbow problems which she attributed to her repetitive work, or that she injured her back in June 1991 moving cases of converters on a hand truck. In fact, when asked, plaintiff specifically denied that her back problems were work related.
8. In July 1991 plaintiff came under the care of Dr. Holmberg for complaints of neck pain and right sided headaches. Plaintiff gave a history of being disabled on a number of occasions since 1976 due to her congenital abnormality. Dr. Holmberg was of the opinion that the type of work plaintiff was doing for defendant-employer in April, May and June 1991 aggravated her pre-existing congenital abnormality, and that plaintiff should avoid frequent lifting over 20 pounds.
9. Plaintiff treated with Dr. Meylor, a chiropractor, for her neck pain and headaches from 6 January 1992 to 18 May 1992, and at no time did she mention injuring her back at work in June 1991 moving converters. Instead, she gave a history of neck pain with headaches beginning in 1977 and escalating ever since.
10. Plaintiff's testimony that she injured her back in June 1991 moving and unloading cases of converters in Burlington is not accepted as credible.
11. Assuming plaintiff did suffer a specific traumatic incident in June 1991 moving cases of converters in Burlington, plaintiff unjustifiably failed to report the injury to her supervisor within 30 days. She had daily phone contact with her supervisor who saw plaintiff two to three times a week. She specifically denied to her supervisor that her back complaints were caused by a work related injury. Even though she did not receive an orientation until August 1991, after receiving the orientation she still did not report the alleged injury for which she was being treated. On 18 February 1992, she still had not reported a back injury, but she did report a recent elbow injury.
12. There is no evidence that plaintiff's employment with defendant-employer placed her at an increased risk of developing lateral epicondylitis as compared to members of the general public not so employed.
13. On 10 February 1992 plaintiff sustained an injury to her right elbow as the result of an interruption of her regular work routine when she was trying to loosen a corroded connector on a severely water damaged module. She had to pull unusually hard on the adjustable wrench and felt a burning in her right biceps. Plaintiff reported this injury to her supervisor within the week.
14. Plaintiff returned to Dr. Mortenson on 17 February 1992 and described the above injury to him. Dr. Mortenson diagnosed a pulled biceps tendon, which was entirely different from her right elbow problem. Dr. Mortenson placed plaintiff on light duty with no heavy pulling or lifting greater than five pounds with the right arm. By plaintiff's next visit on 20 April 1992, the problem with the biceps tendon had resolved. She missed only two and one-half days from work on account of this injury. There is no evidence that she retains any permanent disability as a result of the 10 February 1992 injury to the biceps tendon. There is no evidence that plaintiff's chronic pain problem was caused or aggravated by this acute injury to her biceps tendon. Her chronic pain complaints are related to her headaches, neck pain and right elbow pain.
15. There is no evidence that plaintiff has been unable to earn the same wages she was earning at the time of the injury in the same or any other employment as a result of the injury of 10 February 1992, after the two and one-half days she was out immediately following 17 February 1992.
16. Prior to the time plaintiff's employment with defendant-employer was terminated, she was offered and turned down a job at the same pay in customer service, which was within her physical restrictions at the time.
17. Mr. Carpenter's opinion that due to plaintiff's chronic pain and personality and characterological problems she is not employable is not persuasive. First, after an extensive work up and two week session at the Pain Management Center, plaintiff was found to be employable despite her chronic pain. Second, Mr. Carpenter did not do any testing. Dr. Ricketson did do extensive testing and found that despite plaintiff's hypervigilance, distractibility, hypomania and irritability, plaintiff worked at a very high rate of speed with above average accuracy. She scored exceptionally high on attention and concentration testing, and her work was extremely precise and accurate, organized and systematic, even when she had to stop because of fatigue in her right arm. The test results are accorded greater weight than the information upon which Mr. Carpenter based his opinion.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In order for plaintiff's lateral epicondylitis to be compensable as an occupational disease under G.S. § 97-53 (13), it must be shown to be not only caused by her employment, but there must be evidence that her employment placed her at an increased risk of developing lateral epicondylitis as compared to members of the general public not so employed. Because there is no medical evidence of record establishing that plaintiff's employment with defendant-employer placed her at an increased risk of developing lateral epicondylitis as compared to members of the general public not so employed, her claim for any benefits on account of that condition is hereby denied.
2. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer in June 1991 moving converters in Burlington. Her testimony to the contrary is not accepted as credible for the reasons outlined above. In any event, assuming plaintiff did sustain a compensable injury in June 1991, she, without reasonable excuse, failed to give notice of the injury to defendants within 30 days after its alleged occurrence, and therefore no compensation is payable under G.S. § 97-22.
3. On 10 February 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she suffered a pulled biceps tendon. This condition was resolved by 20 April 1992. Plaintiff sought medical treatment on only one occasion from Dr. Mortenson for this condition and she did not suffer a compensable period of temporary total disability following this injury. Plaintiff retains no permanent disability as a result of this injury, and there is no evidence that this injury aggravated her pre-existing lateral epicondylitis.
4. Plaintiff's pre-existing chronic pain, depression, and personality disorders are neither causally related to, nor aggravated by, her injury of 10 February 1992.
5. Plaintiff is entitled to payment by defendants of all medical expenses incurred as a result of her 10 February 1992 injury by accident.
* * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for temporary total disability compensation, permanent partial impairment compensation, and medical expenses on account of her lateral epicondylitis and alleged back injury in June 1991 is hereby denied.
2. Defendant shall pay all medical expenses incurred as a result of the compensable injury of 10 February 1992 when bills for the same have been properly submitted and approved through procedures adopted by the Commission.
3. Defendants shall pay the costs.
4. Defendants shall pay an expert witness fee of $125.00 to Dr. Meylor, $150.00 to Dr. Thompson, and $275.00 to Dr. Mortenson.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________ THOMAS J. BOLCH COMMISSIONER
BSB:be